UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN MONAIR-DONTH PETTWAY,

    Plaintiff,

v.

    Civil Case No. 21-12716
    Honorable Linda V. Parker

THE MICHIGAN STATE POLICE,
*et al.*,

    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 13]

This lawsuit arises out of claims of excessive police force against officers from the Michigan State Police pursuant to 42 U.S.C. § 1983. On November 19, 2021, Plaintiff Devin Monair-Donth ("Plaintiff") filed a Complaint against numerous Defendants: The Michigan State Police ("MSP"), Officer Brennan Kelly ("Officer Kelly") and John Doe Officers, in their individual and official capacities (collectively, "Defendants"). (ECF No. 1.) The Complaint alleges the following counts: violations of the Fourth and Fourteenth Amendments against all Defendants (Count I); violation of Eighth Amendment against all Defendants (Count II); false imprisonment (Count III); assault and battery (Count IV); intentional infliction of emotional distress against all Defendants (Count V); and

1

gross negligence (Count VI). (*Id.*) This matter is before the Court on Defendant's motion to dismiss (ECF No. 13.) The motion is fully briefed. (ECF Nos. 14, 15.) For the reasons that follow, the Court is granting in part Defendants' motion.

### I. Factual and Procedural Background

On or about November 6, 2021, Plaintiff visited his sister, Auja Pettway, at her home located in Detroit, Michigan. Defendant Officers arrived at Ms. Pettway's home to execute a search warrant for her boyfriend, Troy Graham-Napper, Jr., related to a parental kidnapping investigation by the Michigan State Police. Once Defendants announced their presence utilizing a speaker, Plaintiff, who was not associated with the criminal investigation, exited the home to notify Defendants that Ms. Pettway and her boyfriend would comply with their requests in order to "diffuse any potential confrontation." (ECF No. 1 at Pg ID 4, ¶ 11.) Immediately after exiting, Officer Kelly verbally attacked Plaintiff and pushed him in his chest. According to Plaintiff, he then "voiced his displeasure of being pushed," which Officer Kelly responded, "don't walk up on me, or I will knock you the fuck out." (*Id.* ¶ 13.)

Officer Kelly then punched Plaintiff in the head with his right hand, followed by three more punches to the head and proceeded to "knee kick" Plaintiff in his ribs. (*Id.* ¶ 14.) While Officer Kelly allegedly assaulted him, Defendant Officers either watched or assisted Officer Kelly by holding Plaintiff's arms and

shoulders down. According to Plaintiff, at no time did he pose any risk of physical threat or harm to Defendants, which was recorded on video by the next door neighbor. As a result of the altercation, Plaintiff suffered injuries to his ribs, head, neck, back, and face. Plaintiff was then thrown to the ground, handcuffed, and arrested where he was held in custody for three days and "deprived of his freedom and liberty and denied medical treatment." (*Id.* at Pg ID 5, ¶ 17.)

On January 1, 2022, the parties stipulated to stay the case, ECF No. 9, pending criminal proceedings against Plaintiff in Wayne County Circuit Court arising from the same encounter. *See People v. Pettway*, Wayne County Circuit Court No. 21-21725427-01. On September 7, 2022, the Court entered a stipulated order to administratively reopen the case after the state court proceedings were dismissed. (ECF No. 10.)

## II. Legal Standard

Although Defendants fail to state the procedural grounds for their motion to dismiss, the Court assumes that they seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action . . ..." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in Iqbal and Twombly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.) Moreover, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*,

4

551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing Hammond v. Baldwin, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Analysis

Defendants seek partial dismissal and raise the following arguments in reference to Plaintiff's Complaint: (1) Eleventh Amendment immunity for MSP and claims against Officer Kelly in his official capacity; (2) dismissal of the Eighth Amendment claim (Count II) and gross negligence claim (Count VI) against Officer Kelly; and (3) any other relief the Court deems appropriate.

5

### A. Eleventh Amendment Immunity

Defendants maintain that the Court should dismiss all claims against Defendant Michigan State Police and Defendant Kelly in his official capacity. The Eleventh Amendment bars "'any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. amend XI. Under the doctrine of sovereign immunity, states, as well as state officials, may not be sued in their official capacity for monetary damages in federal court. *See Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citation omitted); *see also Scott v. Michigan*, 173 F. Supp. 2d 708, 713 (E.D. Mich. 2001) (noting that "a suit against a state officer in his or her official capacity is tantamount to a suit against the state itself.") (citation omitted). This protection also applies to state agencies and departments. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), applies." *Boler*, 865 F.3d at 410 (citing *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 597 (6th Cir. 2016)).

Here, Plaintiff attempts to refute Defendant's Eleventh Amendment immunity argument by stating that "excessive force is a clearly established Fourth

6

Amendment constitutional right" and noting that due to the amount of evidence he purports to have showing constitutional violations, it would be "premature" for the Court to dismiss the claims. (ECF No. 14 at Pg ID 86.) Despite this unrelated and slightly confusing argument, the law is clear— it is settled law that Section 1983 does not abrogate Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (determining that Congress did not intend to "disturb the States' Eleventh Amendment immunity" by passing § 1983). MSP is an agency created by statute and as such, is entitled to the protection of Eleventh Amendment. *See Scott*, 173 F. Supp. 2d at 714 (citing Mich. Comp. Laws § 16.250). Further, as Officer Kelly is clearly an officer of the state, he is entitled to Eleventh Amendment immunity only in his official capacity. As such, any claims brought against MSP and Officer Kelly in his official capacity seeking money damages must be dismissed due to Eleventh Amendment immunity; however, Officer Kelly may still be liable in his individual capacity.

B.  **Eighth Amendment Claim**

Defendants maintain that Plaintiff has failed to state a claim under the Eighth Amendment. The Eighth Amendment prohibits excessive bail and fines, and the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Supreme Court has held that the Cruel and Unusual Punishments Clause "was designed to protect those *convicted of crimes*, and consequently the Clause applies

7

only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citing *Ingraham v. Wright,* 430 U.S. 651, 664, 671 n.40 (1977)) (internal citations and quotations omitted) (emphasis added). In other words, the Eighth Amendment does not apply to someone in temporary custody of law enforcement. *See Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006) (State pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, not by the Eighth Amendment's Cruel and Unusual Punishment Clause.); *see also Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (noting that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). As such, Plaintiff has failed to state a claim on the face of the Complaint for purposes of the Eighth Amendment and the Court therefore dismisses Count II.

### C. Gross Negligence Claim

In Count VI of the Complaint, Plaintiff alleges "gross negligence," when stating, among other things, that "Defendant's breached the duty of care owed to Plaintiff and proximately caused" injury based on the Defendant Officers conduct. (ECF No 1 at Pg ID 13, ¶ 51.) In response, Defendants maintain that Plaintiff's gross negligence claim must be dismissed because he fails to actually assert a

8

claim of gross negligence because "the tort of assault and battery by gross negligence does not exist." (ECF No. 13 at Pg ID 67 (citing *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 480 (Mich. Ct. App. 1997), *abrogated by Odom v. Wayne Cnty.*, 760 N.W.2d 217 (2008).) Defendants are correct that "gross negligence" is not an independent cause of action in Michigan. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009) (citing *Jennings v. Southwood*, 521 N.W.2d 230, 233 (1994)) ("[T]he Michigan Supreme Court repudiated the common-law concept of gross negligence, reasoning that when it abandoned the contributory-negligence doctrine in [*Placek v. City of Sterling Heights*, 275 N.W.2d 511 (1979)] the concept of gross negligence was no longer needed."). Instead, the phrase is a term of art which provides an exception to Michigan's governmental tort liability act ("GTLA"). Of relevance here, GTLA grants government employees immunity from tort liability so long as the employee's "conduct does not amount to gross negligence." Mich. Comp. Laws § 691.1407(2)(c). The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(8)(a). "A party filing suit against a governmental agency or officer bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 835 N.W.2d 545, 550 (Mich. 2013). It is perhaps for this reason that parties suing state agencies and/or officers regularly

9

label their claims "gross negligence" as opposed to simply "negligence." The label used, therefore, does not warrant a dismissal of Count VI.

### IV.  Conclusion

For these reasons, the Court is dismissing the MSP and Officer Kelly in his official capacity due to Eleventh Amendment immunity. Because Plaintiff failed to state a claim under the Eighth Amendment, the Court is dismissing Count II of the Complaint.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Count II in the Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint against the Michigan State Police and Officer Brennan Kelly (in his official capacity only) is **DISMISSED WITH PREJUDICE.** Officer Brennan Kelly shall remain a party to this litigation in his individual capacity only.

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 8, 2023