UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN MONAIR-DONTH
PETTWAY,

    Plaintiff,

v.             Case No. 21-cv-12716
              Honorable Linda V. Parker
THE MICHIGAN STATE POLICE,
TROOPER BRENNAN KELLY and
JOHN DOE OFFICERS, in their
individual and official capacities,
jointly and severally,

    Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (ECF NO. 32)**

On November 19, 2021, Plaintiff Devin Monair-Donth Pettway initiated this

lawsuit against the Michigan State Police ("MSP"), MSP Trooper Brennan Kelly,

in his individual and official capacities, and MSP John Doe officers,[1] in their

individual and official capacities (collectively, "Defendants").[2]  (ECF No. 13.)  Mr.

---

[1] Mr. Pettway has not moved to amend the complaint or otherwise name the John Doe Officers.

[2] On May 8, 2023, this Court granted in part and denied in part Defendants' motion to dismiss.  (*See* ECF No. 16.)  In that opinion and order, the Court dismissed with prejudice (1) Mr. Pettway's Eighth Amendment claim against all Defendants, (2) his claims against MSP, and (3) his claims against Trooper Kelly in his official capacity.  (*Id*. at Pg ID 108.)  Accordingly, the Court addresses only the claims against Trooper Kelly in his individual capacity.

Pettway asserts the following claims under 42 U.S.C. § 1983 in his complaint:
substantive due process, equal protection, and unreasonable search and seizure in
violation of the Fourth and Fourteenth Amendments (Count I).  (*See* ECF No. 1.).
Mr. Pettway also brings forth several violations under Michigan law: false
imprisonment (Count III); assault and battery (Count IV); intentional infliction of
emotional distress (Count V); and gross negligence (Count VI).  (*Id*.)

This matter is presently before the Court on Trooper Kelly's motion for
summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which has
been fully briefed.  (*See* ECF Nos. 32, 35, 36.)  Finding the facts and legal
arguments adequately presented in the parties' filings, the Court is dispensing with
oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the
reasons that follow, the Court denies the motion.

## I.    Factual Background

On the morning of November 6, 2021, Mr. Pettway visited his sister, Auja
Pettway, at her home located in Detroit, Michigan.  (ECF No. 32 at Pg ID 163.)
During his visit, members of MSP, including Trooper Kelly, arrived at the home to
execute an arrest and search warrant involving Ms. Pettway's boyfriend, Troy
Graham-Napper, Jr., who was the target of an alleged parental kidnapping
investigation arising out of Pittsburgh, Pennsylvania.  (*Id*. at Pg ID 163-64.)  The
search warrant authorized MSP to search the entire premises and curtilage of the

residence as well as the search and seizure of vehicles, cellphones, and documentation related to the suspect or victim of the investigation.  (*Id*. at Pg ID 164.)  Mr. Pettway was not the target of MSP's investigation or involved with the corresponding warrant.  (ECF No. 35 at Pg ID 587.)  Portions of their investigation, including the altercation from which Mr. Pettway's complaint originates, are captured on three separate video recordings: a neighbor's cellphone, *see* Ex. 6, and dashboard cameras from two law enforcement vehicles, *see* Exs. 4, 5.

When MSP arrived at Ms. Pettway's home, they stood outside and used a loudspeaker to announce their presence and that they had a search warrant.  (ECF No. 32 at Pg ID 169.)  Mr. Pettway, who was inside the home with Ms. Pettway and Mr. Graham-Napper, exited through the side door of the home with his backpack.  (*Id*.)  Mr. Pettway walked down part of the driveway to speak to Trooper Kelly and another officer, informing them that the family would comply and bring the child outside.  (*Id*.)  Trooper Kelly and other troopers on the scene described Mr. Pettway as appearing cooperative.  (*Id*. at Pg ID 173.)

Amid their conversation, Trooper Kelly attempted to take the backpack that Mr. Pettway was holding in order to search it.  (ECF No. 32-8 at Pg ID 392.)  Mr. Pettway admitted that he initially held the bag in a way to prevent Trooper Kelly from taking it.  (*Id*.)  After talking more with the troopers and learning that the

3

search warrant authorized the search of the bag, Mr. Pettway cooperated and held the bag open, allowing them to search it.  (*Id*. at Pg ID 393.)  Still, Trooper Kelly took the bag from Mr. Pettway and pushed him against the wall of the house "to ensure officer safety."[3]  (ECF No. 32 at Pg ID 169, 173.)  Trooper Kelly testified that the troopers also tried to search Mr. Pettway's person, but he resisted by slapping their hands and pulling away from them.  (*Id*. at Pg ID 173.)

Mr. Pettway denies swatting at or smacking their hands but admits that yelling ensued between him and Trooper Kelly, which included him using profanity.  (*Id*. at Pg ID 169; ECF No. 32-8 at Pg ID 400.)  For example, Trooper Kelly can be heard telling Mr. Pettway to "chill out" and Mr. Pettway saying "let me go" multiple times.  (Exs. 6, 4; ECF No. 32 at Pg ID 165-68.)  Mr. Pettway is also heard on the video, telling a trooper "I don't give a fuck about a case," which he testified related to him "not [being] scared to catch a charge by not opening [his] bag."  (ECF No. 32-8 at Pg ID 400-01.)

The troopers did not find any weapons or information related to the investigation.  (ECF No. 32 at Pg ID 173.)  However, tensions remained high as Mr. Pettway tried to express to Trooper Kelly his dissatisfaction about how he

---

[3] This point marks the start of the video footage made available to the Court.  (*See* Ex. 4.)  Because some parts of the altercation are blocked from the view of the cameras, the Court's recitation of the following events remains based on the record as a whole, including the parties' testimony.

4

"snatched the bag out of his hand" and acted aggressively toward him.  (ECF No. 32-8 at Pg ID 399.)  Mr. Pettway can be heard saying, "It ain't about what you said, it's how you said it."  (ECF No. 32 at Pg ID 366; Exs. 4, 6.)  At some point in this moment, Trooper Kelly claims that he ordered Mr. Pettway to go to the front of the house, but instead of complying, Mr. Pettway disregarded the order and "decided to walk up on" him.  (ECF No. 32 at Pg ID 173.)

Trooper Kelly then pushes Mr. Pettway back against the wall and Mr. Pettway says, "stop pushing me."  (Ex. 6.)  Trooper Kelly pushes him harder against the wall while yelling, "Don't fucking walk up on me or I'm going to knock you out!"  (*Id*.)  Mr. Pettway moves away from the wall and says, "push me again."  (*Id*.)  Then, Trooper Kelly, in several swift moves, pushed Mr. Pettway again, punched him four times in the face, struck him in his rib area two times with his knee, and, with the assistance of other troopers, wrestled him to the ground where they eventually handcuffed him and detained him at the Detroit Detention Center.  (Ex. 6; ECF No. 35 at Pg ID 592.)  As a result of the altercation, Mr. Pettway suffered injuries to his ribs, head, neck, back, and face.  (ECF No. 35 at Pg ID 592.)

Mr. Pettway and his sister were charged with multiple felony charges of resisting and obstructing a police officer under Michigan law.  (*Id*. a Pg ID 593.)

The Wayne County Prosecutor's Office, however, later dismissed all the charges against them. (*Id.*)

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is

insufficient. *See Liberty Lobby*, 477 U.S. at 252.  The Court must accept as true the nonmovant's evidence and draw "all justifiable inferences" in the nonmovant's favor. *See id*. at 255.

### III.   Applicable Law and Analysis

In his motion, Trooper Kelly asserts that summary judgment is appropriate as to Mr. Pettway's claims because he is entitled to qualified immunity under federal law and governmental immunity under Michigan law and the claims are not viable.  (*See generally* ECF No. 32.)  He also argues that Mr. Pettway has waived several claims.  (ECF No. 36 at Pg ID 623.)  The Court addresses each argument in turn.

### A. Waived Claims

As a preliminary matter, the Court finds that Mr. Pettway waived his federal claims for substantive due process, equal protection, and unreasonable search and seizure as well as his state-based claims for false imprisonment, intentional infliction of emotional distress, and gross negligence.  (*See id*.)

Mr. Pettway does not dispute Trooper Kelly's arguments regarding these claims in his response brief.  In fact, his response is void of any information, evidence, or specific facts furthering the claims.  Mr. Pettway has an obligation to show that there is a genuine issue of material fact that Trooper Kelly committed the alleged violations. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th

Cir. 1992) (explaining that the non-movant "by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing there is a genuine issue for trial."). When a party leaves "[i]ssues . . . adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," the Sixth Circuit deems the issue waived or forfeited. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). It is insufficient for Mr. Pettway to "mention a possible argument" in his complaint and, "in the most skeletal way, leav[e] the [C]ourt to . . . . put flesh on its bones." (*Id.*) (quoting *McPherson*, 125 F.3d at 995-96).

The Court is not required to comb through the record to piecemeal Mr. Pettway's arguments, nor can the Court rely on his complaint at this stage. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is not the district court's . . . duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court."). Mr. Pettway's abandonment of these issues is fatal to his claims against Trooper Kelly.

Accordingly, the Court considers the abovementioned claims waived and will not address them.[4]

**B. Section 1983 Claim and Qualified Immunity**

Trooper Kelly argues that he did not violate Mr. Pettway's Fourth Amendment right to be free from excessive force, but even if he did, there was no clearly established law indicating that the use of force under the circumstances presented was unconstitutional.  (ECF No. 32 at Pg ID 189-91.)  The Court disagrees.

Section 1983 creates a private right of action against a government official who deprives an individual of his or her constitutional rights under color of state law.  42 U.S.C. § 1983.  Yet a plaintiff's right to sue a government official, such as a police officer, may be eliminated in certain instances.  Qualified immunity shields an officer from personal liability and civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The

---

[4] The Court also notes that the Fourteenth Amendment is not the proper mechanism to redress an alleged substantive due process violation. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (quotations omitted) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

9

qualified immunity defense gives officers "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) (quotations omitted).

The Court's analysis of qualified immunity consists of a two-step inquiry: (1) whether a constitutional right has been violated and (2) whether that right was clearly established. *See Pearson*, 555 U.S. at 232; *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016). Both prongs must be established for the claim to go before a jury. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) ("If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages."). While the Court must adopt the plaintiff's version of the facts when evaluating qualified immunity on a motion for summary judgment, the plaintiff bears the ultimate burden of showing that a defendant is not entitled to immunity. *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). The Supreme Court also makes clear that the plaintiff's version should not be adopted when the alleged facts are "blatantly contradicted by the record," such as a videotape capturing the events in question, "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

    1. Constitutional analysis

Beginning with the first prong of the qualified immunity analysis, law enforcement officers run afoul of the Fourth Amendment by using excessive force "in the course of an arrest, investigatory stop, or other seizure." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (quotations omitted).  Whether excessive force was used is assessed under "an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants." *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)); *see also Graham*, 490 U.S. at 396.  While force may be appropriate in some instances, the Court's role at the summary judgment stage is to determine if a genuine issue of material fact exists as to whether the officer "could reasonably use the *degree* of force employed against [the plaintiff]." *Martin*, 712 F.3d at 958; *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004) (noting that the force used must "not be unconstitutionally disproportionate in degree to the circumstances").

The assessment is made "without regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Est. of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (restating the objective reasonableness standard in *Graham*).  The Court "judge[s] [the situation] from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and takes into account that police officers "are often forced to make split-second

judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *Est. of Hill by Hill*, 853 F.3d at 312.  The question essentially boils down to whether the officer's actions are "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Martin*, 712 F.3d at 958 (quoting *Graham*, 490 U.S. at 388).

Three factors guide the excessive force analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether [the plaintiff] is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Graham*, 490 U.S. at 396).  "Throughout the inquiry, [a court] must carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham*, 490 U.S. at 396).  The Sixth Circuit has indicated, however, that the *Graham* factors are non-exhaustive– the ultimate question is "whether the totality of the circumstances justifies a particular sort of seizure." *Id*. (quoting *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)) (quotations omitted).

Considering the circumstances in the case at bar, a jury could find that Trooper Kelly's use of force was objectively unreasonable.  The first *Graham* factor does not entirely tilt in Trooper Kelly's favor.  Resisting and obstructing is a

serious crime, but not in every context.  *Eldridge v. City of Warren*, 533 F. App'x 529, 532-33 (6th Cir. 2013) (examining the factual circumstances of the crime committed to determine its severity).  Law enforcement arrived at Ms. Pettway's home to execute a search warrant and effect an arrest on her boyfriend, Mr. Graham-Napper.  (ECF No. 32 at Pg ID 168.)  One could argue that Mr. Pettway hardly interfered with the search given that, in addition to Trooper Kelly, there were at least eight other troopers on the scene who were able to carry out the search and detain the suspect before the physical altercation between Trooper Kelly and Mr. Pettway began.  (*See* ECF No. 32-3 at Pg ID 226.)  Mr. Pettway stood outside of the home, surrounded by law enforcement.  Conversely, a jury could find that Mr. Pettway was doing the opposite: trying to mediate the situation.

Additionally, the Court finds a genuine dispute as to whether Mr. Pettway disobeyed any officer commands that justify the force used.  Specifically, at issue is whether Mr. Pettway ignored Trooper Kelly's order to go to the front of the house after Trooper Kelly searched him.  (ECF No. 32-3 at Pg ID 236.)  Trooper Kelly asserts that "instead of complying with that [order Mr. Pettway] decided to walk up on [him] and jeopardize [his] safety." (*Id*.)  However, based on the sequence of events described in the parties' briefs, this command should have been audible on the video footage, but it is not.  Trooper Kelly's audio transcriptions of the videos also do not include this alleged command that went ignored.

13

Even if Trooper Kelly gave the order and Mr. Pettway did not comply, the Court still finds a factual issue regarding the second *Graham* factor: whether Trooper Kelly could reasonably perceive Mr. Pettway as a threat under the circumstances. Trooper Kelly maintains that "[a] reasonable officer in [his] position could have concluded that Pettway was about to hit him," ECF No. 32 at Pg ID 190, when he "clench[ed] his fists and walk[ed] towards [him]," ECF No. 32-3 at Pg ID 236. Yet, Mr. Pettway asserts that he did not approach Trooper Kelly "and did nothing other than widen his footing taking a defensive posture [to] prepar[e] himself for any further unprompted assaultive action." (ECF No. 35 at Pg ID 590.)

A reasonable jury could find that Mr. Pettway's repositioning of himself did not pose a serious threat to Trooper Kelly for several reasons. The neighbor's video does not show Mr. Pettway walking towards Trooper Kelly. In fact, it shows the opposite. (*See* Ex. 6.) At the 0:12 mark, Mr. Pettway sidesteps away from the wall, pulls up his pants, and appears to brace himself as Trooper Kelly *leans toward him* to grab him. Mr. Pettway's hands are blocked from the camera's view, but based on what is shown, it does not appear that Mr. Pettway raised his fists.

The Court also finds that the third *Graham* factor weighs in Mr. Pettway's favor. Trooper Kelly argues that his use of force was reasonable because Mr. Pettway "actively resisted [him and] three other officers who were required to gain

14

control and place him in handcuffs." (ECF No. 32 at Pg ID 190.)  The neighbor's video captures the best angle of the arrest. (Ex. 6.)  There, the troopers are seen trying to detain Mr. Pettway while Trooper Kelly punched and knee struck him several times.  Trooper Kelly was at Mr. Pettway's front, one trooper was on his left side, one was at his rear, and, once everyone fell to the ground, another trooper joined in to arrest Mr. Pettway.

A reasonable jury would likely be disinclined to find that Mr. Pettway was in a position to physically struggle with . . .  or disobey [the] officers" at that moment. *See Kent v. Oakland Cnty*., 810 F.3d 384, 392 (6th Cir. 2016) (defining active resistance as "physically struggling with, threatening, or disobeying officers").  For instance, starting at the 0:20 mark, a trooper grabs Mr. Pettway's right arm while seemingly trying to push him forward, but Trooper Kelly is in front of Mr. Pettway with his arms wrapped around his body.  This scenario would arguably make it difficult for anyone in Mr. Pettway's position to comply with or resist an arrest.  At most, the video shows Mr. Pettway sticking his arm out in front of him with an open hand in an attempt to protect himself from Trooper Kelly's blows rather than resist the arrest.

2. Clearly established analysis

The second prong of the analysis–whether a right was clearly established–is met when the existing law "place[s] the constitutionality of the officer's conduct

'beyond debate.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).  In *Wesby*, the Supreme Court

summarized its previous explanations of what "clearly established" means:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that every reasonable official would know.

*Id*. at 49.  (internal quotation marks and citations omitted).  Existing

precedent must "clearly prohibit the officer's conduct in the particular

circumstances before him." *Id*.  In other words, the plaintiff must show that the

right was clearly established in a "particularized sense." *Brosseau v. Haugen*, 543

U.S. 194, 199-200 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

"This requires a high 'degree of specificity.'" *Wesby*, 583 U.S. at 63

(quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (per curiam).  "[C]ourts must

not 'define clearly established law at a high level of generality, since doing so

avoids the crucial question whether the official acted reasonably in the particular

circumstances that he or she faced.'" *Id*. at 63-64 (quoting *Plumhoff v. Rickard*,

572 U.S. 765, 779 (2014)).  Nevertheless, the Sixth Circuit has warned that

defining the right too narrowly would "defeat[] the purpose of § 1983 . . . ."

*Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012).  "'The

16

mere fact that a court has not held the particular action in question unlawful is insufficient to create immunity.'" *Martin*, 712 F.3d at 961 (quoting *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007)).  "An action's unlawfulness may be plain 'from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.'" *Id*. (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)).

Trooper Kelly maintains that he did not violate any clearly established law that "required [him] to wait for the first swing of a fist or the first impact of a punch" or "give Pettway every benefit of the doubt."  (ECF No. 32 at Pg ID 190-91.)  While there may not be specific caselaw indicating such a rule, Trooper Kelly is not absolved from liability.  *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (recognizing that a specific body of caselaw did not exist regarding the misconduct at issue, but still finding that the officer violated the plaintiff's clearly established right).

The right to be free from physical force when one is not actively resisting the police was clearly established by November 6, 2021, the date the incident involving Trooper Kelly occurred.  *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (citing *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)).  "[C]ases in this Circuit 'clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.'"

17

*Cline v. Myers*, 495 F. App'x 578, 582 (6th Cir. 2012).  As discussed above,

viewing the record in the light most favorable to Mr. Pettway, there was no

indication that he committed a severe crime in the circumstances presented, posed

an immediate threat to any of the troopers, or attempted to resist arrest.

Because there are genuine issues of material fact as to both prongs of the

qualified immunity analysis, Trooper Kelly is not entitled to summary judgment

with respect to Mr. Pettway's § 1983 claim of excessive force.

C.  State Claim and Governmental Immunity

Trooper Kelly maintains that summary judgment is proper because he is

entitled to governmental immunity from Mr. Pettway's Michigan-based assault and

battery claim.  (ECF No. 32 at Pg ID 191-93.)  He also argues that Mr. Pettway

"relies on a factually unsupported view of the videos," making his assault and

battery claim unviable based on merit.  (ECF No. 36 at Pg ID 628.)  The Court

finds these arguments unpersuasive.

Michigan Compiled Law § 691.1407 provides government employees with

immunity from intentional torts, such as assault and battery, when the following

conditions are met: "(1) the acts were taken during the course of employment and

the employees were acting, or reasonably believed that they were acting, within the

scope of their authority, (2) the acts were taken in good faith, and (3) the acts were

discretionary-decisional, as opposed to ministerial-operational."  *King v. City of*

*Rockford*, 97 F.4th 379, 399 (6th Cir. 2024) (quoting *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 222 (Mich. 2008)).

At issue are the first and second factors.  In his brief, Mr. Pettway presents the standard for the third element but does not argue a position.  (ECF No. 35 at Pg ID 605.)  The Court finds that the element is met because Trooper Kelly's conduct was unquestionably discretionary.  Trooper Kelly's decision to use force and how much force to use "require[ed] personal deliberation, decision, and judgment." *Fineout v. Kostanko*, 780 F. App'x 317, 330 (6th Cir. 2019) (explaining that "ministerial acts constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice.")

With regard to the first element, Mr. Pettway argues that Trooper Kelly was not acting within the scope of his authority at the time of the incident because he "effectively instigat[ed] a one-sided beating . . . that was representative of the gross negligence in the performance of his law enforcement duties."  (ECF No. 35 at Pg ID 604.)  Notwithstanding that the acts undertaken by Trooper Kelly may have been unlawful, the incident occurred during the course of his employment.  As noted by Trooper Kelly, he was at Ms. Pettway's home to enforce a search warrant and interacted with Mr. Pettway for the purpose of executing the warrant.  (*See* ECF No. 36 at Pg ID 628.)  These facts satisfy the first element.

19

As to the second factor, Trooper Kelly, reiterating the arguments he raised under Mr. Pettway's federal claim, maintains that he did not act with malice or culpable recklessness. (ECF No. 32 at Pg ID 192.) According to Trooper Kelly, Mr. Pettway acted aggressively and used "defiant words" in a situation where he "had mere split seconds to react." (*Id*. at Pg ID 193.) Unlike qualified immunity under federal law, Trooper Kelly's subjective beliefs are important to the instant analysis. "The good-faith prong protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *King*, 97 F.4th at 399-400 (quoting *Odom*, 760 N.W.2d at 229)). Thus, an officer "must establish that he acted without malice" and the force used was necessary. *Odom*, 760 N.W.2d at 229

The Sixth Circuit has established that a court's ruling as to the reasonability of the force used by an officer under § 1983 goes hand in hand with a court's good faith and intentional tort determinations. *Shumate v. City of Adrian*, 44 F.4th 427, 451 (6th Cir. 2022) (citing *Hunt v. Massi*, 773 F.3d 361, 372 (1st Cir. 2014)). When a court finds that an officer is not entitled to qualified immunity, it is proper for a court to make the same conclusion as to governmental immunity under state law. *Id*.; *see also Parsons v. City of Ann Arbor*, No. 22-1338, 2023 WL 3413898, at *4 (6th Cir. May 12, 2023) (holding that "because [the officer's] actions were objectively reasonable, he acted in good faith."); *Grawey v. Drury*, 567 F.3d 302,

315-16 (6th Cir. 2009) (affirming the lower court's decision denying the officer-defendants' motion for summary judgment on the assault and battery claims because their "use of force was not reasonable as a matter of law."). The rationale is that state-law immunity and an assault and battery claim rest on the same disputed material facts under a § 1983 excessive force claim. *Shumate*, 44 F.4th at 451.

As previously discussed, there is a triable issue as to whether Trooper Kelly acted objectively reasonable when he pushed, punched, and struck Mr. Pettway with his knee several times even though the severity of the crime was low and Mr. Pettway did not impose an immediate threat to anyone's safety or actively resist his arrest. As to governmental immunity and Mr. Pettway's assault and battery claim, a reasonable trier of fact could similarly find that Trooper Kelly's arrest was "not undertaken in good faith, and with willful disregard for the possibility of harm." *Id*. at 452.

Therefore, Trooper Kelly is not entitled to governmental immunity or summary judgment as to Mr. Pettway's assault and battery claim.

## IV.    Conclusion

Based on the foregoing, the Court finds that Mr. Pettway has established a genuine issue of material fact as to his claim for excessive force under § 1983 and

Michigan-based assault and battery claim, making the claims appropriate for a jury.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (ECF No. 32) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 20, 2025